1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Harry A. Olivar, Jr. (Bar No. 143089)
2    harryolivar@quinnemanuel.com
     Rachael L. McCracken (Bar No. 252660)
3    rachaelmccracken@quinnemanuel.com
     865 South Figueroa Street, 10th Floor
4  Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
5  Facsimile: (213) 443-3100

6    Marc L. Greenwald (Bar No. 176072)
     marcgreenwald@quinnemanuel.com
7  51 Madison Avenue, 22nd Floor
   New York, New York 10010
8  Telephone: (212) 849-7000
   Facsimile: (212) 849-7100

9

10 Attorneys for Defendants Jesta Digital,
   LLC, Elliot Aintabi, and Jason Aintabi

11

12              UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA,

14                   WESTERN DIVISION

15 AIDAN FOLEY, an individual; AF         CASE NO. 13-cv-03691-DSF-SSx
   DOUBLE EAGLE, INC., a California
16 corporation,
                                          **DEFENDANTS' MEMORANDUM
17          Plaintiffs,                    OF LAW IN SUPPORT OF
                                           MOTION TO DISMISS**
18      vs.
                                          Hearing date: July 15, 2013
19 ELLIOT AINTABI, an individual;         Time: 1:30 p.m.
   JASON AINTABI, an individual;
20 JESTA DIGITAL, LLC, a Delaware         Action Removed: May 23, 2013
   limited liability company; and DOES 1  Judge: Hon. Dale S. Fischer
21 through 10, inclusive,                  Courtroom 840

22          Defendants.

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT...............................................................................1

BACKGROUND......................................................................................................2

    A.    The Parties ............................................................................2

    B.    The "Non-Disclosure and Non-Circumvention Agreement"..................2

    C.    Jesta Group Purchases Fox Mobile Group .............................................5

ARGUMENT ..........................................................................................................6

I.     THE FRAUD-BASED CLAIMS SHOULD BE DISMISSED.........................7

    A.    The Economic Loss Rule Precludes the Fraud-Based Claims................7

    B.    Plaintiffs Can Not Establish Justifiable Reliance................................. 10

    C.    The "Confidential Relationship" Required for Constructive Fraud Is Not Present ........................................................................... 13

II.    FOLEY FAILS TO ALLEGE A CLAIM FOR BREACH OF CONTRACT....................................................................................... 14

    A.    Defendants Did Not Breach the Agreement by Purchasing Fox Mobile.................................................................................................. 14

    B.    Plaintiffs' Fail to Allege a Breach of the Agreement........................... 15

III.   JESTA DIGITAL, LLC IS THE SUCCESSOR TO FOX MOBILE AND SHOULD BE DISMISSED FROM THIS ACTION............................ 16

IV.   THE REQUEST FOR LOST PROFITS SHOULD BE STRICKEN............. 17

    A.    Foley May Not Seek Lost Profits for the Contract Claim.................... 18

    B.    The Request for Lost Profits on the Fraud Claims Is too Remote and Speculative.................................................................................. 19

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## Cases

*Am. Int'l Enters., Inc. v. Fed. Deposit Ins. Corp.,*
   3 F.3d 1263 (9th Cir. 1993) ..............................................................................12

*Anderson v. Deloitte & Touche,*
   56 Cal. App. 4th 1468 (1997) .........................................................................10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...........................................................................................6

*ASKD NV v. The Hartford Fin. Servs. Group, Inc.,*
   No. CV 04-10475, 2005 WL 5714359 (C.D. Cal. Mar. 7, 2005).......................17

*Barbara A. v. John G.,*
   145 Cal. App. 3d 369 (1983) ......................................................................13, 14

*Barrientos v. Citimortgage, Inc.,*
   2012 WL 5914514 (N.D. Cal. Nov. 26, 2012) ...................................................8, 9

*Beckwith v. Dahl,*
   205 Cal. App. 4th 1039 (2012) .........................................................................10

*Benis v. Sallie Mae, Inc.,*
   2011 WL 3714783 (C.D. Cal. Aug. 24, 2011)..............................................15, 16

*Boorstein v. Men's Journal LLC*
   No. CV 12-00771, 2012 WL 2152815 (C.D. Cal. June 14, 2012) ........................6

*Bureerong v. Uvawas,*
   922 F. Supp. 1450 ..............................................................................................17

*California Shoppers, Inc. v. Royal Globe Ins. Co.,*
   175 Cal. App. 3d 1 (1985) .................................................................................19

*City Solutions, Inc. v. Clear Channel Comms., Inc.,*
   201 F. Supp. 2d 1048 (N.D. Cal. 2002)...........................................................13, 14

*Continental Car-Na-Var Cop. v. Moseley,*
   24 Cal.2d 104 (1944) .........................................................................................19

*Downey Venture v. LMI Ins. Co.*,
  66 Cal. App. 4th 478 (1998) ..............................................................11

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993) ..........................................................17

*Freeman & Mills Inc. v. Belcher Oil Co.*,
  11 Cal. 4th 85 (1995) ..........................................................................7

*Glen K. Jackson Inc. v. Roe*,
  273 F.3d 1192 (9th Cir. 2001) ..........................................................12

*Guido v. Koopmen*,
  1 Cal. App. 4th 837 (1992) ................................................................10

*In re Harmon*,
  250 F.3d 1240 (9th Cir. 2001) ..........................................................13

*JMP Secs. LLP v. Altair Nanotechnologies Inc.*,
  880 F. Supp. 2d 1029 (N.D. Cal. 2012)..........................................7, 8, 9

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ..........................................................10

*In re Leisure Corp.*,
  No. CV 03-03012, 2007 WL 607696 (N.D. Cal. Feb. 23, 2007) ..........15

*Levy v. State Farm Mutual Auto. Ins. Co.*,
  150 Cal. App. 4th 1 (2007) ................................................................16

*Liggins v. Tabalon*,
  2007 WL 7314203 (Cal. Sup. Ct. Mar. 19, 2007) ..............................16

*MDNet, Inc. v. Pharmacia Corp.*,
  147 Fed. App'x 239 (3d Cir. 2005) ....................................................12

*Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc.*,
  629 F. Supp. 2d 1135 (E.D. Cal. 2009) ................................................7

*Oracle USA, Inc., v. XL Global Servs., Inc.*,
  2009 WL 2084154 (N.D. Cal. July 13, 2009)................................7, 9, 10

*Persson v. Smart Inventions, Inc.*,
  125 Cal. App. 4th 1141 (2005) ..........................................................14

*Phillippe v. Shapell Industries,*
   43 Cal.3d 1247 (1987) ...................................................................................11, 12

*Reddy v. Litton Indus., Inc.,*
   912 F.2d 291 (9th Cir. 1990) .................................................................................15

*Robinson Helicopter Co., Inc. v. Dana Corp.,*
   34 Cal. 4th 979 (2004) .............................................................................................7

*Rosal v. First Federal Bank of California,*
   671 F. Supp. 2d 1111 (N.D. Cal. 2009)...........................................................10, 11

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
   806 F.2d 1393 (9th Cir. 1986) .................................................................................7

*Shroyer v. New Cingular Wireless Servs., Inc.,*
   622 F.3d 1035 (9th Cir. 2010) .................................................................................6

*Small v. Fritz Cos., Inc.,*
   30 Cal. 4th 167 (2003) ...........................................................................................10

*Sprewell v. Golden State Warriors,*
   266 F.3d 979 (9th Cir. 2001) ...................................................................................6

*Steckman v. Hart Brewing,*
   143 F.3d 1293 (9th Cir. 1998) ...............................................................................15

*Sussex Fin. Enters., Inc. v. Bayerische Hypo-Und Vereinsbank AG,*
   460 Fed. App'x 709 (9th Cir. 2011).......................................................................12

*Tyler v. Children's Home Society,*
   29 Cal. App. 4th 511 (1994) ...........................................................................10, 13

*Vess v. Ciba-Geigy, Corp.,*
   317 F.3d 1097 (9th Cir. 2003) .................................................................................6

*Vestar Dev. II, LLC v. General Dynamics Corp.,*
   249 F.3d 958 (9th Cir. 2001) .................................................................................18

## Statutes/Rules

Cal. Civ. Code § 3300...............................................................................................18

Cal. Civ. Code § 3301...............................................................................................18

Fed. R. Civ. P. 9(b) ..................................................................................6

Fed. R. Civ. P. 12(b) ..............................................................................20

Fed. R. Civ. P. 12(f) ...............................................................................17

**<u>Miscellaneous</u>**

48 Cal. Jur. 3d Parties § 37 ....................................................................16

5 Witkin, Cal. Procedure Pleading, § 732................................................11

1

## **PRELIMINARY STATEMENT**

2       Defendants are aware the Court discourages motions to dismiss, but this
3  motion is warranted because the claims here suffer from fatal defects that cannot be
4  cured by amendment.

5       Aidan Foley is a (self-described) sophisticated businessman who in 2009
6  drafted and entered into a "Confidentiality And Non-Circumvention Agreement"
7  (the "Agreement") with Jesta Group, a business owned by Elliott and Jason Aintabi.
8  The Agreement governed the use of confidential information relating to a division of
9  News Corp called Fox Mobile, which was being sold by News Corp.  Even
10  accepting all the factual allegations of the Complaint as true, the Aintabis did not
11  violate the Agreement.  The clear terms of the agreement he drafted foreclose the
12  claims as a matter of law.

13       The fraud-based claims asserted by AF Double Eagle and Mr. Foley
14  (together, "Foley") should be dismissed for three related reasons.  First, the fraud
15  claims are precluded by California's economic loss rule, which operates to prevent
16  parties from escaping bargained-for contractual rights and obligations through tort-
17  based claims.  Second, because the contract between Foley and the Jesta Group had
18  an integration clause and an additional requirement that "[a]ny additional
19  agreement[s]" be in writing and signed, Foley cannot have reasonably relied on any
20  oral "promise."  Third, the relationship between Foley and the Aintabis was an
21  arms' length relationship, not the "confidential relationship" necessary to establish
22  constructive fraud under California law.

23       The contract claim fares no better.  First, the Agreement expired on December
24  17, 2010, with no provision for its terms to continue beyond expiration, and the
25  Aintabis did not acquire Fox Mobile until December 22, 2010.  Second, even during
26  its term, the Agreement did not forbid the Aintabis from purchasing Fox Mobile.
27  Rather, it required only that the Aintabis "consider" entering the purchase with
28  Foley, which even the Complaint concedes is exactly what the Aintabis did.

1  Foley's claims against Jesta Digital, LLC should be dismissed because that
2  entity did not exist at the time of the complained-of conduct. The then-existing
3  entity it is the successor to, Fox Mobile, was the *object* of the conduct Foley is
4  complaining of, and under any reading of the Complaint, did not breach any contract
5  or commit any fraud.

6  Finally, Foley's speculative "lost profits" damages claim is improper under
7  black letter California law and should be stricken.

## BACKGROUND

### A.  The Parties

10  According to the Complaint, Plaintiff Aidan Foley is the founder and CEO of
11  Plaintiff AF Double Eagle, a California corporation with its principal place of
12  business in Los Angeles, California. (Compl. ¶¶ 1, 14). Mr. Foley is a sophisticated
13  business man with over 20 years of executive level management experience in the
14  technology and entertainment fields. (*Id.* ¶ 1). Prior to serving as CEO of AF
15  Double Eagle, Mr. Foley was the Chief Marketing Officer and President of the
16  Enterprise Solutions Group, an "$800 million global business of Liberty Media."
17  (*Id.*). Before that, Mr. Foley was the CEO of Kodak's Digital Entertainment
18  Division. (*Id.*).

19  Defendants Elliot and Jason Aintabi are father and son. They are successful
20  entrepreneurs who operate under the trade name Jesta Group. The Aintabis
21  purchased Fox Mobile on December 22, 2010. *See* RJN Ex. A at 4. Defendant Jesta
22  Digital, LLC is the successor to Fox Mobile Distribution, LLC—the entity that was
23  the subject of the agreement at issue in this litigation and which the Aintabis
24  acquired.

### B.  The "Non-Disclosure and Non-Circumvention Agreement"

26  According to the allegations in the Complaint, in October 2009, Mr. Foley
27  was approached by personnel from Fox Mobile Group and asked to discuss the
28  potential sale of it by its parent company, News Corp. (Compl. ¶ 23). Foley entered

1  into a non-disclosure agreement with News Corp. and "began looking for potential
2  investors … to purchase Fox Mobile." (*Id.* at ¶ 24). The Complaint does not
3  describe what compensation Mr. Foley received from News Corp.

4      Mr. Foley was introduced to Jason Aintabi in December 2009 and raised the
5  potential purchase of Fox Mobile. (Compl. ¶ 25). On December 17, 2009,
6  following preliminary discussions, Mr. Foley and Jesta Group entered into the
7  Agreement. (*Id.* at ¶ 26, Ex. A). The Agreement is on "AF Double Eagle, Inc."
8  letter head (*id.* at Ex. A p. 1) and was drafted by Foley.

9      The purpose of the Agreement, as set forth in the introductory declarations,
10  was "to enter into a confidential relationship with respect to the disclosure by
11  Discloser to Recipient of certain [confidential] information" related to the sale of
12  Fox Mobile. (*Id.*). The Agreement was effective for only one year from the date of
13  execution, December 17, 2009. (Compl. ¶ 26, Ex. A ¶ 3 ("The term of this
14  Agreement shall be for a period of one year beginning on the Effective Date of this
15  Agreement (the 'Term').")). Accordingly, any and all applicable terms of the
16  Agreement expired on December 17, 2010.

17      By the terms of the Agreement, Foley was to provide information relevant to
18  the potential purchase of Fox Mobile, including "all information or material that has
19  or could have commercial value," financial data, financial statements, and proposals.
20  (Compl. Ex. A ¶ 1). In exchange, the Aintabis would maintain the information as
21  confidential subject to the terms of the Agreement (*see id.* at ¶ 3), would refrain
22  from taking actions that would deprive Foley of "benefits [ ] which would otherwise
23  be owed" during the one year term of the Agreement (*id.* at ¶¶ 4, 7), and would
24  "consider a possible transaction or relationship with" Foley "and/or opportunity."
25  (*Id.* at 1). The Aintabis were free to engage in direct communications with Fox
26  Mobile and News Corp., subject to Mr. Foley's consent and the requirement that
27  Foley not be deprived of "benefits … which would otherwise be owed." (*Id.* at ¶ 4).

28

1    The Agreement included several additional provisions governing the parties'
2  ongoing relationship after the execution of the Agreement.  These provisions are of
3  critical importance to this litigation and, tellingly, are not referenced in the
4  Complaint.

5    *First*, the parties agreed that any new agreements related to the purchase of
6  Fox Mobile had to be signed by the parties and in writing:

7    9.    No Additional Agreements.  Neither the holding of discussions
8        nor the exchange of materials or information shall be construed as an
9        obligation of Discloser to enter into any agreement with Recipient or
10        prohibit Discloser from providing the same or similar information to
11        other parties and enterring into agreements with other parties.
12        Discloser reserves the right, in its sole discretion, to reject any and all
13        proposals made by Recipient or any of its Representatives with regard
14        to a transaction between Recipient and Discloser and to terminate
15        discussions and negotiations with Recipient or any of its
16        Representatives at any time and for any reason.  Any additional
17        agreement between the parties, if any, shall be executed in writing and
18        signed by Discloser and Recipient.

19
20  (*Id.* at ¶ 9).

21    *Second*, the parties agreed that the Agreement "expressed the full and
22  complete understanding of the parties with respect to the subject matter hereof," and
23  that any changes to the terms of the Agreement had to be signed by the parties and
24  in writing:

25    18.    Entire Agreement.    This Agreement expresses the full and
26        complete understanding of the parties with respect to the subject matter
27        hereof and superesedes all prior or contemporaneous proposals,
28        agreements, representations and understandings, whether written or

-4-

1  oral, with respect to the subject matter hereof.  This Agreement is not to
2  be construed, however, to limit any rights that Discloser may have
3  under trade secret, copyright, patent or other laws that may be available
4  to Discloser.  This Agreement may not be amended or modified except
5  in writing signed by each of the parties hereto.  The headings hereof are
6  discriptive only and not to be construed in interpreting the provisions
7  hereof.

8
9  (*Id.* at ¶ 18).  Thus, by virtue of the Agreement, there could be no additional
10  agreements or modifications to the parties' relationship, unless such additional
11  agreements or modifications were committed to *writing* and *signed* by the parties.[1]

12        **C.    Jesta Group Purchases Fox Mobile Group**

13        Foley alleges that during the year term of the Agreement, Foley conducted
14  extensive due diligence and analysis on Fox Mobile and created market and business
15  plans and strategies, which were provided to the Aintabis.  (Compl. ¶¶ 27-39).  As is
16  clear from the Agreement, the parties considered their potential involvement in the
17  acquisition of Fox Mobile to be independent of one another, although they left open
18  the possibility of entering into an additional agreement related to Fox Mobile.  (*See
19  id.* at ¶ 3 (Mr. Foley "offered the investment opportunity to a small group of
20  handpicked investors"); Ex. A ¶ 9 ("Neither the holding of the discussions nor the
21  exchange of materials or information shall be construed as an obligation of
22  Discloser to enter into any other agreement with Recipient or prohibit Discloser
23  from providing the same or similar information to other parties and entering into
24  agreements with other parties.").

25        According to the Complaint, by November 2010 the price of Fox Mobile was
26  substantially reduced, at which point the Aintabis allegedly offered to "provide all

27  [1]  Additional relevant contractual provisions are discussed where appropriate.
28

1 | the capital necessary for the parties' joint purchase," and at which time Foley claims
2 | it tried to close the transaction by providing additional due diligence and
3 | "communicat[ing] with Fox Mobile and Defendants." (Compl. at ¶¶ 38, 39). The
4 | Complaint further alleges that, in December 2010, the Aintabis began stone-walling
5 | Foley to force it out of the deal to allow the Aintabis to purchase Fox Mobile on
6 | their own. (*Id.* at ¶¶ 40, 41).

7 |      The central premise of the Complaint is that, throughout this time period, the
8 | Aintabis misled Foley by representing that (i) the Aintabis were interested in
9 | providing the capital for a joint acquisition of Fox Mobile, (ii) Mr. Foley would be
10 | the CEO of the acquired entity, and (iii) the parties were moving forward with the
11 | potential transaction together. (*Id.* at ¶¶ 43-53).

12 | **ARGUMENT**

13 |      To survive a motion to dismiss, a complaint must "contain sufficient factual
14 | matter, accepted as true, to state a claim to relief that is plausible on its face."
15 | *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *see also*
16 | *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).
17 | A plaintiff must "establish more than a sheer possibility that a defendant has acted
18 | unlawfully." *Boorstein v. Men's Journal LLC*, No. CV 12–00771, 2012 WL
19 | 2152815, at *1 (C.D. Cal. June 14, 2012) (Fischer, J.). Each claim must be
20 | supported by factual allegations; "mere conclusory statements" or "legal
21 | conclusions" will not suffice. *Iqbal*, 556 U.S. at 663-64. A court need not accept as
22 | true allegations that are contradicted by matters properly subject to judicial notice.
23 | *Boorstein*, 2012 WL 2152815 at *1; *Sprewell v. Golden State Warriors*, 266 F.3d
24 | 979, 988 (9th Cir. 2001).

25 |      With respect to Plaintiffs' fraud-based claims, Rule 9(b) requires that the
26 | Complaint A plaintiff asserting fraud must "set forth what is false or misleading
27 | about" each statement, Fed. R. Civ. Proc. 9(b); *Vess v. Ciba-Geigy, Corp.*, 317 F.3d
28 | 1097, 1106 (9th Cir. 2003), and allege the "time, place, and specific content of the

1 false representations as well as the identities of the parties to the misrepresentation."
2 *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.
3 1986).

4 **I.     THE FRAUD-BASED CLAIMS SHOULD BE DISMISSED**

5       The Complaint alleges four fraud-based claims: promissory fraud (Count 2);
6 concealment (Count 3); intentional misrepresentation (Count 4); constructive fraud
7 (Count 5); and aiding and abetting (Count 6).   Each of these claims should be
8 dismissed with prejudice.

9       **A.     The Economic Loss Rule Precludes the Fraud-Based Claims**

10       Under California's economic loss rule, "no tort cause of action will lie where
11 the breach of the duty is nothing more than a violation of a promise which
12 undermines the expectations of the parties to an agreement." *Oracle USA, Inc., v.*
13 *XL Global Servs., Inc.*, 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009).   The rule
14 "prevent[s] the law of contract and the law of tort from dissolving into one another."
15 *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004) (internal
16 modification and quotation marks omitted).     Enforcement of the rule enables
17 sophisticated business parties—like Foley and the Aintabis—who conduct
18 commerce by contract to "estimate in advance the financial risks" of their
19 relationship. *Freeman & Mills Inc. v. Belcher Oil Co.*, 11 Cal.4th 85, 106 (1995)
20 (citation omitted).

21       Courts dismiss fraud-based claims where, as Foley has done here, "allegations
22 underpinning a straightforward claim for breach of commercial contract [are] recast
23 [] as torts." *JMP Secs. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029,
24 1043 (N.D. Cal. 2012); *see also Multifamily Captive Group, LLC v. Assurance Risk*
25 *Managers, Inc.*, 629 F. Supp. 2d 1135, 1146 (E.D. Cal. 2009) (stating that courts
26 will apply the economic loss rule to bar fraud-based claims where "the damages
27 plaintiffs seek are the same economic losses arising from the alleged breach of
28 contract").

1    For example, in *JMP Securities*, the plaintiff financial advisor brought breach
2  of contract, fraud and negligent misrepresentation claims against a client relating to
3  a financial services agreement. 880 F. Supp. 2d at 1033. With respect to the fraud
4  and negligent misrepresentation claims, plaintiff alleged that the defendant
5  "misrepresented to [plaintiff] on numerous occasions that [defendant] would pay
6  [plaintiff] the higher fee associated with a strategic investment when all along
7  [defendant] knew it would not," and that in reliance on those statements plaintiff
8  rendered valuable services. *Id.* at 1042. In other words, the tort claims consisted of
9  "nothing more than [the defendant's] alleged failure to make good on its contractual
10  promises." *Id.* at 1043.

11    The court found that the fraud-based claims were directly barred by the
12  economic loss rule because "[v]irtually any time a contract has been breached, the
13  party bringing suit can allege that the breaching party never intended to meet its
14  obligations" and allowing such fraud claims would "collapse the carefully-guarded
15  distinction between contract and tort law." *Id.* at 1044 (citation omitted). The court
16  accordingly dismissed both the fraud and negligent misrepresentation claims with
17  prejudice. *Id.*

18    *Barrientos v. Citimortgage, Inc.*, 2012 WL 5914514 (N.D. Cal. Nov. 26,
19  2012) is also on point. The plaintiff in *Barrientos* brought claims for breach of
20  contract, fraud, negligence and intentional tort, all of which were based on an
21  alleged oral agreement with defendant to modify a loan. *Id.* at *1. The breach of
22  contract claim was barred by the statute of frauds, and the remaining fraud-based
23  claims, like Mr. Foley's fraud-based claims here, were "all premised on a single
24  idea: that Defendant never intended to make good on its (purportedly contractual)
25  implied promises . . . and that its breach of those implied promises therefore were
26  tortious." *Id.* The court dismissed the fraud claims with prejudice, finding that
27  "California's economic loss rule bars such claims, *which seek to transform run-of-*

28

1 | *the-mill contract actions into tort claims subject to punitive damages.*"  *Id.* at \*1-2
2 | (emphasis added).

3 |     Foley's fraud based claims, like those in *JMP Securities LLP* and *Barrientos*,
4 | are premised upon the idea that Foley relied to its detriment on certain contract-
5 | based promises made by the Aintabis that they never intended to "make good" on.
6 | (*See* Compl. ¶¶ 67, 68, 81, 82, 91-93, 103-106).  Each of these fraud claims arises
7 | from and pertains to the exact same subject matter as the underlying contract
8 | between the parties:  the acquisition of Fox Mobile and the parties obligations to
9 | each other with respect to that purchase.  Further, each of these claims is subject to
10 | the Agreement's requirement that any additional agreements between the parties be
11 | in writing and signed.  Accordingly, Foley's contention that the fraud-based
12 | allegations fall outside or are independent of the contractual relationship, (*see*
13 | Compl. ¶ 102), is meritless.

14 |     *Oracle* is instructive.  There, the plaintiff and defendant entered a written
15 | contract pursuant to which Oracle agreed to license certain software and provide
16 | related consulting services.  *Oracle*, 2009 WL 2084154, at \*2.  An employee of the
17 | defendant subsequently promised to pay outstanding invoices if Oracle agreed to
18 | continue to provide consulting services for an additional month free of charge.  *Id.*
19 | Oracle provided the services, but defendant never paid the fees.  *Id.*  In addition to
20 | suing for breach of contract, Oracle brought a promissory fraud claim, asserting that
21 | the defendant's promise to pay the past invoices was a fraudulent statement intended
22 | to induce Oracle to provide the additional services.  *Id.*

23 |     Oracle sought to avoid application of the economic loss role to its fraud
24 | claim, arguing that it fell outside "the four corners" and was "independent of" the
25 | parties' written contract.  *Id.* at \*3.  The court disagreed, explaining that the fraud-
26 | based claim was grounded on the parties' underlying contractual relationship and
27 | defendant's failure to meet plaintiff's "bargained-for" expectations.  *Id.* at 4.
28 |

1  Accordingly, as with Mr. Foley's fraud-based claims in this case, the economic loss
2  rule barred the claim in *Oracle*.

3      In sum, rather than bring contract-based claims for the alleged agreements to
4  jointly purchase Fox Mobile and install Mr. Foley as the CEO of the acquired
5  entity—"run-of-the-mill" contract claims which fail by virtue of the parties express
6  agreement that any and all future relationships between the parties be signed and in
7  writing, (*see* Compl. Ex. A. ¶¶ 9, 18)—Foley has "recast" the claims as fraud-based
8  (tort) claims and seeks punitive damages.  The economic loss rule bars this effort to
9  defeat the parties' bargained-for contractual expectations, and, accordingly, Foley's
10  fraud-based claims should be dismissed with prejudice.

11      **B.     Plaintiffs Can Not Establish Justifiable Reliance**

12      Mr. Foley cannot, as a matter of law, establish justifiable reliance. *See Guido*
13  *v. Koopmen*, 1 Cal.App.4th 837, 843 (1992) ("[W]hether a parties' reliance was
14  justified may be decided as a matter of law if reasonable minds can come to only
15  one conclusion based on the facts.").

16      Under California law, to sustain a fraud claim a plaintiff must plead that a
17  defendant: (a) made misrepresentation (false representation, concealment, or
18  nondisclosure); (b) that it knew to be false (or 'scienter'); (c) with intent to defraud,
19  i.e., to induce reliance; (d) that plaintiff justifiably relied upon; and (e) resulting
20  damage. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); *Small v.*
21  *Fritz Cos., Inc.*, 30 Cal.4th 167, 173 (2003).  Promissory fraud and intentional
22  misrepresentation have the same elements. *See Beckwith v. Dahl*, 205 Cal.App.4th
23  1039, 1060 (2012); *Anderson v. Deloitte & Touche*, 56 Cal.App.4th 1468, 1474
24  (1997).  Constructive fraud and fraudulent concealment also require justifiable
25  reliance. *See Tyler v. Children's Home Society*, 29 Cal.App.4th 511, 548 (1994)
26  (stating that constructive fraud "arises on a breach of duty by one in a confidential
27  or fiduciary relationship which induced *justifiable reliance* by the latter to his
28  prejudice") (emphasis added and citations omitted); *Rosal v. First Federal Bank of*

1 *California*, 671 F. Supp. 2d 1111, 1132 (N.D. Cal. 2009) (explaining that the
2 elements of fraudulent concealment include "actual, justifiable reliance").

3      To establish justifiable reliance, Foley is required to set forth facts showing
4 that "actual reliance on the representations was justifiable so that the cause of the
5 damage was the defendant's wrong and not the plaintiff's fault." 5 WITKIN, CAL.
6 PROCEDURE PLEADING, § 732, p. 153 (5th ed. 2008) . To do so, there must be "proof
7 that the party asserting the fraud . . . *justifiably relied* on a promise or conduct by the
8 party against whom the fraud . . . is asserted." *Downey Venture v. LMI Ins. Co.*, 66
9 Cal.App.4th 478, 510 (1998) (finding that plaintiff could not claim that it engaged in
10 a malicious prosecution in "justifiable reliance" on the insurer's promise to cover
11 malicious prosecution damages, because malicious prosecution "is never justified").

12      Here, the bases for Foley's fraud claims are that the Aintabis allegedly: (i)
13 misrepresented that they were committed to Mr. Foley's bid for Fox Mobile and
14 would provide capital for the purchase of Fox Mobile, (ii) sought confidential
15 information from Mr. Foley under false pretenses, and (iii) misrepresented that they
16 would hire Mr. Foley as CEO of the acquired company. (Compl. ¶¶ 67 (promissory
17 fraud claim), 80-81 (concealment fraud) 91-92 (intentional misrepresentation claim),
18 102-04 (constructive fraud). The Complaint, however, does not allege that these
19 purported misrepresentations (or promises) were in writing and signed by the
20 parties—a clear and unambiguous requirement set forth in the Agreement. In other
21 words, by the terms of the Agreement, a representation by either of the parties was
22 not enforceable and could not be reasonably relied upon by the other unless it was in
23 writing and signed by all parties.

24      Where an agreement is required to be in writing and signed, courts have
25 found a parties' alleged reliance on purported oral statements unreasonable as a
26 matter of law. For example, in *Phillippe v. Shapell Industries*, the Supreme Court of
27 California held that a real estate broker's "presumed knowledge" of the statute of
28 frauds, which requires real estate commission agreements to be signed and in

1  writing, "precludes him from showing [] reasonable reliance on an oral agreement
2  ...." and that the broker's "reliance on an oral promise to pay a commission or an
3  oral promise to execute the required writing at a later date *cannot be sufficiently*
4  *reasonable to support an action for fraud*." 43 Cal.3d 1247, 1270 (1987) (emphasis
5  added); *see also Am. Int'l Enters., Inc. v. Fed. Deposit Ins. Corp.*, 3 F.3d 1263, 1269
6  (9th Cir. 1993) (dismissing fraud claim where party was unable to establish
7  justifiable reliance on an oral promise because the party was presumed to have
8  knowledge of the statue of frauds); *Sussex Fin. Enters., Inc. v. Bayerische Hypo-*
9  *Und Vereinsbank AG*, 460 Fed. App'x 709, 712 (9th Cir. 2011) (holding that, as a
10 matter of law, plaintiff financial services company could not justifiably rely on an
11 oral promise that contradicts the plain terms of a written agreement); *Glen K.*
12 *Jackson Inc. v. Roe*, 273 F.3d 1192, 1201 (9th Cir. 2001) (finding no justifiable
13 reliance where plaintiff's expectations conflicted with the written contract); *MDNet,*
14 *Inc. v. Pharmacia Corp.*, 147 Fed. App'x 239, 245 (3d Cir. 2005) (dismissing
15 fraudulent misrepresentation claim because plaintiff could not establish justifiable
16 reliance "on an oral promise foreclosed by the requirement that a subsequent
17 agreement be in writing").

18     Consistent with California law, Mr. Foley's reliance on the alleged
19 representations is unreasonable as a matter of law. As a sophisticated businessman
20 with "over 20 years of executive level management experience" involving multi-
21 million dollar companies (*see* Comp. ¶ 1), Mr. Foley could not justifiably rely on
22 purported representations that *failed to comply* and *directly conflicted with* the plain
23 requirement of the Agreement that *he drafted* that required agreements to be "in
24 writing" and "signed" to be enforceable. Accordingly, the fraud claims should be
25 dismissed with prejudice.

26
27
28

1
2

C.    The "Confidential Relationship" Required for Constructive Fraud
      Is Not Present

3       The constructive fraud claim also must be dismissed with prejudice because
4   Foley fails to, and cannot as a matter of law, allege the requisite special relationship.
5   To state a cause of action for constructive fraud a plaintiff must allege:   (1) *a*
6   *fiduciary or confidential relationship*; (2) an act, omission, or concealment
7   involving a breach of that duty; (3) reliance; and (4) resulting damage.  *Tyler*, 29
8   Cal.App.4th at 548; *In re Harmon*, 250 F.3d 1240, 1248 n. 10 (9th Cir. 2001)
9   ("Constructive fraud is a unique species of fraud applicable only to a fiduciary or
10  confidential relationship.") (citation omitted).

11      Here, Mr. Foley asserts the existence of "confidential relationship" based on
12  (i) the parties' Agreement and (ii) the "additional promises" (or, as Mr. Foley refers
13  to them elsewhere in the Complaint, misrepresentations) that the Aintabis would
14  provide capital for the parties' acquisition of Fox Mobile and make Mr. Foley the
15  CEO of the company.  (Compl. ¶ 102).  Mr. Foley's allegations fail for two reasons.

16      *First*, the Agreement is insufficient to establish the requisite confidential
17  relationship.  The type of confidential relationship required by the constructive fraud
18  doctrine does not arise "every time two parties share confidence with one another"
19  pursuant to a written confidentiality agreement.   *City Solutions, Inc. v. Clear*
20  *Channel Comms., Inc.*, 201 F. Supp. 2d 1048, 1050 (N.D. Cal. 2002) (finding that
21  the "detailed confidentiality agreement [between the parties] suggests arm's-length
22  dealings between co-equals," and that that agreement coupled with the "sharing of
23  confidences . . . clearly envisioned by [the] agreement" did "not raise[] a triable
24  issue regarding a confidential relationship").

25      *Second*, the "essence of a . . . confidential relationship is that the parties do
26  not deal on equal terms, because the person in whom trust and confidence is reposed
27  and who accepts that trust and confidence is in a superior position to exert unique
28  influence over the dependent party." *Barbara A. v. John G.*, 145 Cal.App.3d 369,

383 (1983). Put differently, "*vulnerability* is the *necessary predicate* of a *confidential relation* and the *law treats it as absolutely essential.*" *Persson v. Smart Inventions, Inc.*, 125 Cal.App.4th 1141, 1161 (2005) (citation omitted) (emphasis added) (holding that an "arms-length negotiation for the sale of shares in a corporate enterprise" where there was no evidence of a "weaker" or a "stronger party" did not give rise to a confidential relationship as a matter of law). The Complaint fails to allege the "predicate" vulnerability; nor does the parties' relationship fit within one of the well-defined categories for which the law automatically imposes confidential or fiduciary duties. *City Solutions, Inc.*, F. Supp. 2d at 1050. Therefore Foley is unable to establish a confidential relationship as a matter of law, and the constructive fraud claim should be dismissed with prejudice.

## II. FOLEY FAILS TO ALLEGE A CLAIM FOR BREACH OF CONTRACT

### A. Defendants Did Not Breach the Agreement by Purchasing Fox Mobile

Foley's primary contract claim, premised on the allegation that the Aintabis breached a prohibition against purchasing Fox Mobile without including Foley in the deal, fails because the Agreement had expired when the Aintabis purchased Fox Mobile and does not include any such prohibition. To the contrary, the Agreement allowed the Aintabis to purchase Fox Mobile without including Foley.

First, even if the Agreement did preclude the Aintabis from acquiring Fox Mobile without Foley, that prohibition would only be in effect for one year, until December 17, 2010. (Compl. ¶ 26, Ex. A ¶ 3 ("The term of this Agreement shall be for a period of one year beginning on the Effective Date of this Agreement.")). Thus, the Aintabis would be in breach if, and only if, they purchased Fox Mobile on or before December 17, 2010. The Complaint does not allege that the transaction

1  closed on or before that date[2] and, indeed, Fox Mobile was not acquired until
2  December 22, 2010. *See* RJN Ex. A at 4.

3      Second, the Agreement did not prevent the Aintabis from purchasing Fox
4  Mobile without Mr. Foley. To avoid dismissal for failure to state a claim, the
5  Complaint must identify the particular contractual provisions that were allegedly
6  breached. *See Benis v. Sallie Mae, Inc.*, 2011 WL 3714783, at *3 (C.D. Cal. Aug.
7  24, 2011) (dismissing breach of contract claim where plaintiff failed to identify the
8  "particular" provisions that were breached). The Complaint here conclusorily
9  asserts that the Agreement "expressly prohibited" the Aintabis from purchasing Fox
10  Mobile (Compl. ¶ 59), but the Complaint fails to identify any contractual provision
11  that prohibited the Aintabis from purchasing Fox Mobile (because there is none).
12  This is fatal to Mr. Foley's breach of contact claim and requires dismissal. *See In re*
13  *Leisure Corp.*, No. CV 03-03012, 2007 WL 607696, at *11 (N.D. Cal. Feb. 23,
14  2007) (dismissing breach of contract claim because, *inter alia*, plaintiff "could "not
15  point to any specific contractual term that was breached" by defendant).

16      For these reasons, Mr. Foley failed to, and indeed can never, allege a breach
17  of the Agreement based on the Aintabis' purchase of Fox Mobile, and that aspect of
18  the breach of contract claim should be dismissed with prejudice. *See Steckman v.*
19  *Hart Brewing*, 143 F.3d 1293, 1298 (9th Cir. 1998) (a complaint should be
20  dismissed with prejudice where an "amended complaint would be an exercise in
21  futility"); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (same).

22      **B.  Plaintiffs' Fail to Allege a Breach of the Agreement**

23      Foley's fallback theory is based on allegations that the Aintabis breached the
24  Agreement by engaging in direct and secret communication with Fox Mobile and
25  continuing communicate directly with Fox Mobile after Mr. Foley withdrew

26  _____
27  [2]  The Complaint merely asserts that "Defendants closed the purchase of Fox Mobile in
   or about late December 2010." (Compl. ¶ 42).
28

1    consent. (Compl. ¶¶ 53, 60). Mr. Foley has failed to plead with the requisite
2    specificity the damages resulting from the alleged communications between the
3    Aintabis and Fox Mobile, which warrants dismissal of the claim. *See, e.g., Levy v.*
4    *State Farm Mutual Auto. Ins. Co.*, 150 Cal. App.4th 1, 5 (2007) (Each element must
5    be pleaded with specificity and general averments that the defendant "failed to
6    perform duties or comply with the contract" are insufficient); *see also Benis*, 2011
7    WL 3714783, at *3 ("It is Plaintiffs' responsibility to allege a causal link between a
8    particular breach and resulting damages"). Indeed, Foley has pled no facts
9    indicating that the alleged communications somehow prohibited it from
10   communicating with Fox Mobile or otherwise interfered with, hindered, or damaged
11   its own efforts to acquire Fox Mobile.

12   **III.    JESTA DIGITAL, LLC IS THE SUCCESSOR TO FOX MOBILE AND**
13           **SHOULD BE DISMISSED FROM THIS ACTION**

14        Jesta Digital, LLC did not even exist when the Agreement was signed or
15   when any of the alleged wrongdoing occurred and therefore cannot be liable for the
16   breach of contract or fraud-based claims.

17        Ordinarily, only the parties to a contract are bound by it and may be sued for
18   breach. *See* 48 CAL. JUR. 3D PARTIES § 37 ("A party cannot be charged on a
19   contract to which he or she is not a party, and thus … only the parties to the contract
20   sued on should be made [] defendant[s]."); *see also Liggins v. Tabalon*, 2007 WL
21   7314203 (Cal. Sup. Ct. Mar. 19, 2007) (dismissing various named defendants
22   because they were not parties to the contract at issue). As set forth on the first and
23   signature pages of the Agreement, the Agreement was between only Jesta Group
24   and Double Eagle. (Compl. Ex. A pp. 1, 6).

25        Foley nonetheless names Jesta Digital, LLC as a defendant to the breach of
26   contract and fraud-based claims. Foley asserts that the terms of the Agreement
27   made all "subsidiaries, affiliates, partners or related entities" of both Double Eagle
28   and Jesta Group parties to Agreement, which, according to Foley, would include

1   Jesta Digital, LLC. (Compl. ¶ 7). Even assuming the validity of that assertion,
2   Foley's naming of Jesta Digital, LLC still fails by virtue of the Complaint's
3   allegations. Foley alleges that the entity was "created after-the-fact," in December
4   2010, once the "wrongdoing herein occurred." (Compl. ¶ 8). In other words, Jesta
5   Digital, LLC—the successor to Fox Mobile (the object of the conduct Foley
6   complains of)—did not even exist until after the Agreement had already expired and
7   the alleged wrongdoing had already occurred, and therefore could not have been
8   bound by, or responsible for breaches of, the Agreement or the alleged wrongdoing.
9   Accordingly, Jesta Digital, LLC should be dismissed with prejudice.

10  **IV.   THE REQUEST FOR LOST PROFITS SHOULD BE STRICKEN**

11          Federal Rule of Civil Procedure 12(f) permits a court to strike immaterial
12  claims in complaints. *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993)
13  *rev'd on other grounds, Fogerty v. Fantasy, Inc.,* 510 U.S. 517 (1994). The function
14  of a Rule 12(f) motion to strike is to avoid the expenditure of time and money
15  litigating spurious claims. *Id.*; *ASKD NV v. The Hartford Fin. Servs. Group, Inc.,*
16  No. CV 04-10475, 2005 WL 5714359, at *2 (C.D. Cal. Mar. 7, 2005) (Fischer, J.).
17  A motion to strike may be used to strike any part of the prayer for relief when the
18  damages sought are not recoverable as a matter of law. *ASKD* NV, 2005 WL
19  5714359 at *2; *Bureerong v. Uvawas,* 922 F. Supp. 1450, 1479 n .34 (C.D. Cal.
20  1996). The overwhelming majority of the over $100 million in damages requested
21  by Foley is based on lost profits, which are not available as a matter of law. Foley
22  cannot credibly allege—and indeed has not alleged—that it would have been able to
23  purchase Fox Mobile if the purported breach of contract and fraud had not occurred.
24  Any assertion that Foley would own Fox Mobile and be collecting profits is
25  dependent on numerous speculative contingencies, contingencies Foley does not
26  even bother to allege.

27

28

## A. Foley May Not Seek Lost Profits for the Contract Claim

Though the Complaint does not explicitly request lost profits with respect to the breach of contract claim, it is evident that Mr. Foley seeks lost profits.[3] The California Civil Code requires that "DAMAGES MUST BE CERTAIN. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin" and bar the request. CAL. CIV. CODE § 3301 (West 1872); *see also* § 3300.

Application of these statutory provisions to Foley's request for lost profits makes plain that "satisfactory proof [of lost profits] is impossible" because the parties never agreed on the terms of the supposed deal. *Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 962 (9th Cir. 2001) (dismissing breach of contract claim seeking lost profits because the parties had not agreed upon the terms of the potential sale and thus there was "no way" "other than through "impermissible speculation" to "know what the terms of the eventual sale would have been—or even if a deal would have been reached"). Indeed, Foley does not even allege the terms of compensation or the specific ownership interest or options in Fox Mobile that it believes it's entitled to, much less allege that any such terms were ever agreed upon. Accordingly, "on these facts, assessing lost profits by the hypothetical terms of a never-formed deal would require impermissible speculation," which bars the request. *Id.* at 962.

---

[3] The breach of contract claim seeks the same $100 plus million worth of damages alleged in each of Plaintiffs' fraud based claims. (*See* Compl. ¶¶ 61 (seeking $100 plus million in damages for breach of contract claim), 74 (seeking $100 plus million in damages based on, *inter alia*, lost profits for promissory fraud claim)).

**B.**      **The Request for Lost Profits on the Fraud Claims Is too Remote and Speculative**

For similar reasons, Foley cannot claim lost profits with respect to the fraud-based claims.  Foley simply asserts that, absent the alleged misrepresentations, Foley "would not have chosen [the Aintabis] as the capital investor," would "not have disclosed [] confidential information," and would not have allowed [the Aintabis] to communicate directly with Fox Mobile.  (Compl. ¶¶ 72, 73, 85, 96, 104).  Foley then alleges that the Aintabis "ousted [Foley] from the purchase, damaging [Foley] in an amount in excess of $100,000,000," (Compl. ¶ 74)— damages which must be based on a theory of lost profits.

Notably the Complaint fails to allege any facts indicating the profits to which Foley would be entitled had it purchased Fox Mobile with the Aintabis.  And Foley does not even bother to set forth facts indicating that, but for the Aintabis' supposed wrongdoing, it would have been in a position to purchase Fox Mobile.  Without these requisite factual allegations, Foley's request for lost profits is entirely uncertain and speculative and should be stricken.  *See, e.g., California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal.App.3d 1, 63 (1985) ("Evidence to establish [lost] profits must not be uncertain or speculative.  This rule ... [applies to] *uncertainty or speculation as to whether the loss of profits was the result of the wrong and whether any such profits would have been derived at all.*") (emphasis added) (quoting *Continental Car-Na-Var Cop. v. Moseley*, 24 Cal.2d 104, 113 (1944)).

1

## CONCLUSION

2   For the foregoing reasons, Defendants respectfully request that this Court

3   grant their 12(b)(6) and 12(f) motions and dismiss Foley's claims with prejudice and

4   strike the request for lost profits.

5

6   DATED: May 30, 2013                  Respectfully submitted,

7                                        QUINN EMANUEL URQUHART &

8                                        SULLIVAN, LLP

9

10

11   By _Marc L. Greenwald_

     Marc L. Greenwald

12

13                                       *Attorneys for Defendants Jesta Digital,*
                                         *LLC, Elliot Aintabi, and Jason Aintabi*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS